UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY STARK, KATHY ROONEY, and
BELMONT HOLDINGS CORP., individually and
on behalf of all others similarly situated,

*Plaintiffs*,

- against -

ERIN CALLAN,
RICHARD S. FULD, Jr.,
JOSEPH M. GREGORY,
CHRISTOPHER M. O'MEARA,
MICHAEL L. AINSLIE,
JOHN F. AKERS,
ROGER S. BERLIND,
THOMAS H. CRUIKSHANK,
MARSHA JOHNSON EVANS,
Sir CHRISTOPHER GENT,
ROLAND HERNANDEZ,
HENRY KAUFMAN,
JOHN D. MACOMBER,
CITIGROUP GLOBAL MARKETS INC.,
BANC OF AMERICA SECURITIES LLC,
MERRILL LYNCH, PIERCE, FENNER & SMITH
        INCORPORATED,
MORGAN STANLEY & CO. INCORPORATED,
UBS SECURITIES LLC,
WACHOVIA CAPITAL MARKETS, LLC,
RBC DAIN RAUSCHER, INC.,
SUNTRUST ROBINSON HUMPHREY, INC.,
WELLS FARGO SECURITIES, LLC,
ABN AMRO INCORPORATED,
BNY CAPITAL MARKETS, INC.,
CHARLES SCHWAB & CO. INC.,
CREDIT SUISSE SECURITIES (USA) LLC,
NATIONAL FINANCIAL SERVICES LLC,
H&R BLOCK FINANCIAL ADVISORS, INC.,
HSBC SECURITIES (USA) INC.,
JACKSON SECURITIES LLC,
JANNEY MONTGOMERY SCOTT LLC,
KEYBANC CAPITAL MARKETS INC.,
MORGAN KEEGAN & COMPANY, INC.,
OPPENHEIMER & CO. INC.,
PIPER JAFFRAY & CO.,
(Caption Continued on Next Page)

No. 08 Civ. 9793

**AMENDED CLASS ACTION
COMPLAINT FOR VIOLATION OF
THE SECURITIES ACT OF 1933 AS
AMENDED, 15 U.S.C. § 77a** *et seq.*

**JURY TRIAL DEMANDED**



RAYMOND JAMES & ASSOCIATES, INC.
ROBERT W. BAIRD & CO. INCORPORATED
STIFEL, NICOLAUS & COMPANY
   INCORPORATED
ZIONS DIRECT, INC.
B.C. ZIEGLER AND COMPANY
SCOTT & STRINGFELLOW, INC.
D.A. DAVIDSON & CO.
DAVENPORT & COMPANY LLC
FERRIS, BAKER WATTS, INCORPORATED
FIFTH THIRD SECURITIES, INC.
FIXED INCOME SECURITIES, INC.
KEEFE, BRUYETTE & WOODS, INC.
MAXIM GROUP LLC
MESIROW FINANCIAL, INC.
SMH CAPITAL INC.
STONE & YOUNGBERG LLC
TD AMERITRADE HOLDING CORPORATION
VINING SPARKS IBG, LP, and
ERNST & YOUNG LLP,

*Defendants*

**GRANT & EISENHOFER P.A.**
Jay W. Eisenhofer
James J. Sabella
David A. Straite
Deborah A. Elman
485 Lexington Avenue, 29th Floor
New York, New York 10017
(646) 722-8500

**KIRBY McINERNEY LLP**
Mark A. Strauss
Richard L. Stone
825 Third Avenue
New York, NY 10022
(212) 371-6600

**LAW OFFICES BERNARD M.**
 **GROSS P.C.**
Deborah R. Gross
100 Penn Square East, Suite 450
Philadelphia, PA 19107
(215) 561-3600

**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
(201) 567-7377

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
369 Lexington Avenue, 10th Floor
New York, New York 10017
(212) 983-9330

*Attorneys for Plaintiffs*

Plaintiffs, individually and on behalf of all other persons similarly situated (the "Class"), by Plaintiffs' undersigned attorneys, make the following allegations on information and belief based upon the investigation of counsel, except as to the allegations pertaining specifically to Plaintiffs and Plaintiffs' counsel which are based on personal knowledge. The investigation conducted by Plaintiffs' counsel included, *inter alia*, a review and analysis of publicly available news articles and reports; public filings including, but not limited to, Lehman Brothers Holdings Inc.'s ("Lehman") Securities and Exchange Commission ("SEC") filings and prospectuses; publicly available filings in court proceedings relating to Lehman; securities analysts' reports and advisories regarding Lehman; documents related to Lehman's bankruptcy petition filed September 15, 2008; testimony and documents presented to the United States house of Representatives' Committee on Oversight and Government Reform; and press releases issued by Defendants (as defined below).  Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## BACKGROUND

1.      This is a securities class action lawsuit brought by the Plaintiffs on behalf of themselves and all persons or entities who, from July 31, 2007, through September 14, 2008 (the "Class Period"), purchased or otherwise acquired debt, preferred equity or other securities (other than common stock), including structured notes, of Lehman Brothers Holdings Inc. ("Lehman") in or traceable to any public offerings conducted by Lehman (the "Public Offerings") through the end of the Class Period, and who were injured thereby.  The securities subject to this action include without limitation securities issued with an aggregate issuance value of in excess of $60 billion in more than 800 separate public offerings conducted by Lehman from June 6, 2006 through the end of the Class Period pursuant to Lehman's Form S-3 shelf Registration Statement

and Prospectus dated May 30, 2006, and the various prospectus supplements filed pursuant thereto.  Excluded from this action is Lehman common stock.

2.      The claims alleged herein are brought exclusively under the Securities Act of 1933 as amended, 15 U.S.C. § 77a *et seq*. (the "Securities Act"), Sections 11, 12, and 15 thereof, which imposes strict liability on a company's directors, officers and signatories of the registration statement, underwriters, and others, for either drafting or signing a registration statement or participating as an underwriter for securities offered pursuant thereto if the registration statement contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

3.      Plaintiffs assert only strict liability and negligence claims pursuant to the Securities Act on behalf of themselves and the Class. Plaintiffs' Securities Act claims are not based on any allegations of knowing or reckless misconduct on behalf of any defendants. Plaintiffs' Securities Act claims do not allege fraud and do not sound in fraud, and Plaintiffs specifically disclaim any reference to or reliance upon allegations of fraud in these non-fraud claims under the Securities Act.

4.      As alleged in more detail below, Lehman materially misrepresented the proper value of its impaired assets in the registration statements and prospectuses that it filed in connection with the Public Offerings (the "Registration Statements" and "Prospectuses"), which included by reference Lehman's earlier public disclosures.  Lehman's well-compensated professional gatekeepers, including the auditors, underwriters, officers and directors named herein, failed to discharge their obligation to disclose the true extent of Lehman's exposure to risky mortgage-backed securities and proper values of its assets, and the registration statements

2

and prospectuses and all public disclosures incorporated therein materially misrepresented the financial health of the Company to potential investors.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under and pursuant to Sections 11, 12 and 15 of the Securities Act, 15 U.S.C. §§ 77k , 77l and 77o.

6.      This action is brought within two years after discovery of the untrue statements and omissions in the Registration Statements and Prospectuses, and within five years of the effective date of the Registration Statements and Prospectuses (Sarbanes-Oxley Act of 2002, PL 107-204, Title VIII, § 804(b)).

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a).

8.      Venue is proper in this District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and 28 U.S.C. § 1391(b), because many of the alleged acts, transactions, and conduct constituting violations of law, including the issuance and dissemination of materially false and misleading information to the public via the Prospectuses and Registration Statements, occurred, at least in part, in this District. Additionally, the Lehman Defendants, at all relevant times, resided, maintained their headquarters or conducted substantial business in this District at 745 Seventh Avenue, New York, NY, 10019.  Many of the underwriter defendants have their headquarters in this District.

9.      In connection with the acts, omissions, conduct, and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the instrumentalities of interstate commerce, including but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## THE PARTIES AND OTHER RELEVANT ENTITIES

**Plaintiffs**

10.     Plaintiff Belmont Holdings Corp. purchased 300,000 Depositary Shares each representing 1/100[th] interest in a share of Lehman Non-Cumulative Perpetual Preferred Stock, Series J (the "Preferred Stock Series J"), during the Class Period, for $25 per share, the issue price, as shown on the attached certification, and was damaged thereby.  The Preferred Stock Series J were issued off the Form S-3 shelf Registration Statement and Prospectus dated May 30, 2006, pursuant to a supplemental public offering prospectus dated February 5, 2008 ("The Preferred Stock Prospectus Supplement").

11.     Plaintiff Jeffrey Stark purchased 2,000 Depositary Shares each representing 1/100[th] interest in a share of the "Preferred Stock Series J, during the Class Period for $25 per share, the issue price, as shown on the attached certification, and was damaged thereby.

12.     Plaintiff Kathy Rooney purchased 1,200 Depositary Shares each representing 1/100[th] interest in a share of the Preferred Stock Series J, during the Class Period for $25 per share, the issue price, as shown on the attached certification, and was damaged thereby.

**The Company**

13.     Lehman Brothers Holdings Inc. ("Lehman" or the "Company") is a non-party that is not named as a defendant in this lawsuit due to its filing for bankruptcy protection under Chapter 11 of the Bankruptcy Code on September 15, 2008.  Lehman was a Delaware corporation with its principal offices located at 745 Seventh Avenue, New York, New York.

14.     Lehman Brothers, Inc. ("LBI") is a non-party that is not named as a defendant in this lawsuit due to its forced dissolution under the SIPA on September 19, 2008.  LBI was Lehman's primary broker-dealer subsidiary, and was wholly-owned by Lehman.  Like Lehman,

LBI was a Delaware corporation with its principal offices located at 745 Seventh Avenue, New York, New York.  LBI acted as an underwriter for various of the Public Offerings, including of the Preferred Stock Series J, and was statutorily responsible as an underwriter for the material misstatements of fact and omissions of fact in the subject Registration Statements and Prospectuses.

**Defendants**

15.     Defendant Erin Callan ("Callan") was the Chief Financial Officer of Lehman from approximately December 1, 2007, until approximately June 12, 2008.  On or about July 15, 2008, it was announced that Defendant Callan would move to Credit Suisse Group to lead its investment bank's global hedge fund business.

16.     Defendant Richard S. Fuld, Jr. ("Fuld"), was the Chairman of the Board of Directors of Lehman and Chairman of the Board of Directors of LBI from 1994 until Lehman's September 15, 2008 bankruptcy, and was CEO of Lehman from 1993 until the bankruptcy.  Defendant Fuld signed Lehman's May 30, 2006 Form S-3 Registration Statement.

17.     Defendant Joseph M. Gregory ("Gregory") was Lehman's President and Chief Operating Officer from approximately May 24, 2004, until approximately June 12, 2008.  He was also a member of the Executive Committee.

18.     Defendant Christopher M. O'Meara ("O'Meara") was Lehman's Chief Financial Officer, Controller, and Executive Vice President from 2004 until December 1, 2007.  O'Meara joined Lehman in 1994, and prior to serving as CFO, he operated as Lehman's Global Controller.  As Controller, O'Meara supervised Lehman's internal accounting programs and procedures.  In his role as the head of Risk Management, O'Meara was also responsible for supervising

Lehman's risk mitigation strategies and procedures.  Beginning on December 1, 2007, O'Meara served as the head of Worldwide Risk Management.

19.     Defendant Michael L. Ainslie ("Ainslie") was a Director of Lehman from 1996 until Lehman's bankruptcy on September 15, 2008, and was also a member of the Audit Committee.   Defendant Ainslie signed Lehman's May 30, 2006 Form S-3 Registration Statement.

20.     Defendant John F. Akers ("Akers") was a Director of Lehman from 1996 until Lehman's bankruptcy on September 15, 2008, and was also chairman of the Compensation and Benefits Committee and was a member of the Finance and Risk Committee.  Defendant Akers signed Lehman's May 30, 2006 Form S-3 Registration Statement.

21.     Defendant Roger S. Berlind ("Berlind") was a Director of Lehman from 1985 until Lehman's bankruptcy on September 15, 2008, and was also a member of the Audit Committee and the Finance and Risk Committee.  Defendant Berlind signed Lehman's May 30, 2006 Form S-3 Registration Statement.

22.     Defendant Thomas H. Cruikshank ("Cruikshank") was a Director of Lehman from 1996 until Lehman's bankruptcy on September 15, 2008, and was also the chairman of the Audit Committee, and was a member of the Nominating and Corporate Governance Committee. He was also a Director of LBI.  Defendant Cruikshank signed Lehman's May 30, 2006 Form S-3 Registration Statement.

23.     Defendant Marsha Johnson Evans ("Evans") was a Director of Lehman from 2004 until Lehman's bankruptcy on September 15, 2008, and was also chairman of the Nominating and Corporate Governance Committee, and was a member of the Compensation and

Benefits Committee and the Finance and Risk Committee.  Defendant Evans signed Lehman's May 30, 2006 Form S-3 Registration Statement.

24.     Defendant Sir Christopher Gent ("Gent") was a Director of Lehman from 2003 until Lehman's bankruptcy on September 15, 2008, and was also a member of the Audit Committee and the Compensation and Benefits Committee.  Defendant Gent signed Lehman's May 30, 2006 Form S-3 Registration Statement.

25.     Defendant Roland A. Hernandez ("Hernandez") was a Director of Lehman from 2005 until Lehman's bankruptcy on September 15, 2008, and was also a member of the Finance and Risk Committee.   Defendant Hernandez signed Lehman's May 30, 2006 Form S-3 Registration Statement.

26.     Defendant Henry Kaufman ("Kaufman") was a Director of Lehman from 1995 until Lehman's bankruptcy on September 15, 2008, and was also chairman of the Finance and Risk Committee.  Defendant Kaufman signed Lehman's May 30, 2006 Form S-3 Registration Statement.

27.     Defendant John D. Macomber ("Macomber") was a Director of Lehman from 1996 until Lehman's bankruptcy on September 15, 2008, and was also a member of the Compensation and Benefits Committee, the Executive Committee, and the Nominating and Corporate Governance Committee.  Defendant Macomber signed Lehman's May 30, 2006 Form S-3 Registration Statement.

28.     Defendants Fuld, Ainslie, Akers, Berlind, Cruikshank, Evans, Gent, Hernandez, Kaufman and Macomber are collectively referred to herein as the "Director Defendants."  The Director Defendants and defendants Callan, Gregory and O'Meara are collectively referred to herein as the "Individual Defendants."

29.     Defendant Citigroup Global Markets Inc. ("Citigroup") is a New York corporation located at 388 Greenwich St., New York, NY, and is a subsidiary of Citigroup, Inc.

30.     Defendant Banc of America Securities LLC ("Banc of America") is a New York limited liability company located at 9 W. 57th St., New York, NY, and is a subsidiary of Bank of America Corporation.

31.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill") is a New York corporation located at 4 World Financial Center, 250 Vesey Street, New York, NY.

32.     Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a Delaware corporation located at 1585 Broadway, New York, NY.

33.     Defendant UBS Securities LLC ("UBS") is a Delaware limited liability company located at 1285 Avenue of the Americas, New York, NY, and is a U.S. broker dealer owned by Swiss bank UBS AG.

34.     Defendant Wachovia Capital Markets, LLC ("Wachovia") is a North Carolina limited liability company located at 301 S. College St., Charlotte, NC, and is a subsidiary of Wachovia Corporation.

35.     Defendant RBC Dain Rauscher Inc. ("RBC") is a Delaware corporation located at 510 Marquette Ave., Minneapolis, MN 55402, and is wholly-owned by Royal Bank of Canada.

36.     Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") is a Tennessee corporation located at 303 Peachtree St., NE, Ste. 2400, Atlanta, GA  30308, and is owned by SunTrust Banks, Inc.

37.     Defendant Wells Fargo Securities, LLC ("Wells Fargo") is a Delaware limited liability company located at 600 California St., Ste. 1600, San Francisco, CA  94108, and is a subsidiary of Wells Fargo & Co.

38.    Defendant ABN AMRO Incorporated ("ABN AMRO") is a New York corporation located at 208 South Lasalle Street, Chicago IL 60604, and is owned by ABN AMRO Bank N.V.

39.    Defendant BNY Capital Markets, Inc. ("BNY Capital Markets") is a Delaware corporation located at  One Wall Street, 18th Floor, New York, NY 10286, and is a subsidiary of The Bank of New York – Mellon Corporation.

40.    Defendant Charles Schwab & Co. Inc. ("Schwab") is a California corporation located at 425 Market Street, 7th Fl., San Francisco, CA 94105.

41.    Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") is a Delaware limited liability company located at 11 Madison Avenue, New York, NY 10010, and is owned by the Credit Suisse Group.

42.    Defendant National Financial Services LLC ("NFS") is a Massachusetts limited liability company located at 200 Seaport Blvd., Boston, MA 02110.

43.    Defendant H&R Block Financial Advisors, Inc. ("H&R Block") is a Michigan corporation located at 719 Griswold Street, Suite 1700, Detroit, MI 48226.

44.    Defendant HSBC Securities (USA) Inc. ("HSBC") is a Delaware corporation located at 452 Fifth Ave., New York, NY  10018, and is a member of the HSBC Group.

45.    Defendant Jackson Securities, LLC ("Jackson") is a Georgia limited liability company located at 100 Auburn Ave., Herndon Plaza, Atlanta, GA 303039.

46.    Defendant Janney Montgomery Scott LLC ("Janney") is a Delaware limited liability company located at 1801 Market Street, Philadelphia, PA 19103.

47.    Defendant KeyBanc Capital Markets Inc. ("KeyBanc") is an Ohio corporation located at 800 Superior Ave., Cleveland, OH 44114.

48.     Defendant Morgan Keegan & Company, Inc. ("Morgan Keegan") is a Tennessee corporation located at 50 Front Street, Memphis, TN 38103.

49.     Defendant Oppenheimer & Co., Inc. ("Oppenheimer") is a New York corporation located at 125 Broad Street, 16th Floor, New York NY 10004, owned by Oppenheimer Holdings, Inc.

50.     Defendant Piper Jaffray & Co. ("Piper Jaffray") is a Delaware corporation located at 800 Nicollet Mall, Suite 800, Minneapolis, MN 55402.

51.     Defendant Raymond James & Associates, Inc. ("Raymond James") is a Florida corporation located at 880 Carrilon Parkway, St. Petersburg, FL 33733.

52.     Defendant Robert W. Baird & Co. Incorporated ("Baird") is a Wisconsin corporation located at 777 East Wisconsin Avenue, Milwaukee, WI 53201.

53.     Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel Nicolaus") is a Missouri corporation located at 501 North Broadway Street, St. Louis, MO 63102, and is a subsidiary of Stifel Financial Corp.

54.     Defendant Zions Direct, Inc. ("Zions") is a Utah corporation located at One South Main Street, Salt Lake City, Utah 84111, and is a subsidiary of Zions Bancorporation.

55.     Defendant B.C. Ziegler and Company ("Ziegler") is a subsidiary of The Ziegler Companies, Inc., and is located at 200 South Wacker Drive, Suite 2000, Chicago, IL 60606.

56.     Defendant Scott & Stringfellow, Inc. ("S&S") is a Virginia company located at 909 East Main Street, Richmond, VA 23219.

57.     Defendant D.A. Davidson & Co. ("Davidson") is a Montana corporation located at 8 Third Street North, Great Falls, MT 59401.

58.     Defendant Davenport & Company LLC ("Davenport") is a Delaware limited liability company located at One James Center, Suite 1100, 901 East Cary Street, Richmond, Virginia 23219.

59.     Defendant Ferris, Baker Watts, Incorporated ("Ferris") is a Delaware corporation located at 1700 Pennsylvania Avenue, Suite 700, Washington, DC 20006.

60.     Defendant Fifth Third Securities, Inc. ("Fifth Third") is an Ohio corporation located at 38 Fountain Square Plaza, Cincinnati, Ohio 45263.

61.     Defendant Fixed Income Securities, Inc. ("Fixed Income") is a California corporation located at 7220 Trade Street, Suite #315, San Diego, CA 92121.

62.     Defendant Keefe, Bruyette & Woods, Inc. ("Keefe, Bruyette") is a New York corporation located at 787 Seventh Avenue, 4th Floor, New York, NY 10019.

63.     Defendant Maxim Group LLC ("Maxim") is a New York limited liability company located at 405 Lexington Ave., New York, NY 10174.

64.     Defendant Mesirow Financial, Inc. ("Mesirow") is a Delaware corporation located at 350 North Clark Street, Chicago, IL 60654.

65.     Defendant SMH Capital, Inc. ("SMH") is a Delaware corporation located at 3100 Chase Tower, Houston, TX 77002.

66.     Defendant Stone & Youngberg LLC ("Stone") is a California limited liability company located at One Ferry Building, San Francisco, CA 94111.

67.     Defendant TD Ameritrade Holding Corporation ("TD Ameritrade") is a Delaware corporation located at 4211 South 102nd Street, Omaha, NE 68127.

68.     Defendant Vining Sparks IBG, LP ("Vining Sparks") is a Tennessee limited partnership located at 775 Ridge Lake Blvd., Memphis, Tennessee 38120.

69.     The defendants named in paragraphs 29 through 68 above are referred to herein as the "Underwriter Defendants." The Underwriter Defendants underwrote the February 5, 2008, offering of the Preferred Stock Series J securities. In addition, a number of the Underwriter Defendants, including UBS, underwrote additional Public Offerings involving Lehman securities sold to members of the proposed Class in this action.

70.     Defendant Ernst & Young LLP ("Ernst & Young") at all relevant times served as an independent registered public accounting firm for Lehman. Its principal place of business is 5 Times Square, New York, New York. Ernst & Young audited Lehman's financial statements for the fiscal year ended November 30, 2007 and issued an unqualified opinion thereon. Such audit report and financial statements were included in Lehman's 2007 annual report, filed on Form 10-K with the SEC and incorporated by reference into the Registration Statements and Prospectuses. Ernst & Young consented to the incorporation by reference of its audited report in the Registration Statements and Prospectuses.

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs brings this action individually and on behalf of persons or entities who, from July 31, 2007, through September 14, 2008 (the "Class Period"), purchased or otherwise acquired debt, preferred stock or other securities (other than common stock), including structured notes, of Lehman Brothers Holdings Inc. ("Lehman") in or traceable to any public offerings conducted by Lehman (the "Public Offerings") through the end of the Class Period, and who were injured thereby. The securities subject to this action include without limitation securities issued with an aggregate issuance value in excess of $60 billion in more than 800 separate public offerings conducted by Lehman from June 6, 2006 through the end of the Class Period pursuant to Lehman's Form S-3 shelf Registration Statement and Prospectus dated May 30, 2006, and the

various prospectus supplements filed pursuant thereto.  Excluded from this action is Lehman common stock.  Excluded from the Class are Defendants, members of the immediate families of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest and the legal representatives, agents, affiliates, heirs, successors-in interest or assigns of any such excluded.

72.     The members of the Class are so numerous that joinder of all members is impracticable during the class period.  The precise number of Class members is unknown to Plaintiffs at this time but is believed to be in the thousands and will be ascertained through appropriate discovery.  In addition, the names and addresses of the Class members can be ascertained from the books and records of Lehman or its transfer agent or the underwriters for the Offerings.  Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in securities class actions.

73.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and have retained competent counsel experienced in class action litigation to further ensure such protection.

74.     Plaintiffs' claims are typical of the claims of the other members of the Class because Plaintiffs' and all of the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants contained within the Registration Statements and Prospectuses. Plaintiffs do not have any interests antagonistic to, or in conflict with, the Class.

75.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may

13

be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members individually to seek redress for the wrongful conduct alleged. Furthermore the sheer number of Public Offerings would make it impracticable and completely cost ineffective for each individual purchaser of securities in the Public Offerings to bring individual claims.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

76.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

a.   Whether the Securities Act was violated by the acts of Defendants as alleged herein;

b.   Whether documents, including the Registration Statements and Prospectuses issued by Defendants omitted and/or misrepresented material facts about Lehman and its business;

c.   Whether the offering and market prices of Lehman securities sold in or traceable to the Public Offerings were artificially inflated due to the non-disclosures and/or untrue statements complained of herein; and

d.   The extent of injuries sustained by the Class and the appropriate measure of damages.

## FACTUAL ALLEGATIONS

77.    Until its bankruptcy on September 15, 2008, Lehman was the fourth-largest securities firm in the United States.  The Company provided various financial services to corporations, governments and municipalities, institutions and individuals worldwide.  Its

services included equity and fixed income sales, trading and research, investment banking, asset management, private investment management, and private equity.

78.     Lehman filed a form S-3 shelf registration statement on May 30, 2006, which included a base prospectus governing the future issuance of debt securities, warrants, purchase contracts, preferred stock, depositary shares, and common stock (the May 30, 2006 shelf registration statement and the base prospectus are together referred to as the "Registration Statement").  Defendants Fuld, Ainslie, Akers, Berlind, Cruikshank, Evans, Gent, Hernandez, Kaufman, and Macomber all signed the Registration Statement.

79.     The Registration Statement expressly incorporated Lehman's annual report (Form 10-K) for the fiscal year ended November 30, 2005, and stated:

> [M]anagement's assessment of the effectiveness of internal control over financial reporting as of November 30, 2005 included therein, have been audited by Ernst & Young LLP, independent registered public accounting firm, as set forth in their reports thereon, included therein, and incorporated by reference herein.  Such consolidated financial statements and management's assessment are, and audited consolidated financial statements and management's assessment of internal control over financial reporting to be included in subsequently filed documents will be, incorporated herein in reliance upon the reports of Ernst & Young LLP pertaining to such consolidated financial statements and management's assessments to the extent covered by consents filed with the Securities and Exchange Commission, given on the authority of such firm as experts in accounting and auditing.

80.     In 2007, Lehman's financial health started to deteriorate as it scrambled to sell impaired subprime mortgage-related assets and to write down the value of impaired assets that remained on the balance sheets.  Throughout 2007, Lehman reduced its exposure to the subprime assets by reallocating its portfolio to riskier and far more opaque commercial real estate assets that Lehman claimed were "Level III" assets.  Lehman's Form 10-K for the year ending November 30, 2007 categorized its financial instrument assets as follows:

> We have categorized our financial instruments measured at fair value into a three-level classification in accordance with SFAS 157. Fair value measurements of financial instruments that use quoted prices in active markets for identical assets or liabilities are generally categorized as Level I, and fair value measurements of financial instruments that have no direct observable levels are generally categorized as Level III.

81.     The public was closely watching how Lehman disposed of or marked down the value of its subprime assets, a scrutiny that gave Lehman the ability to draw attention away from the far greater risk of its strategy of bulking up its commercial real estate portfolio.

82.     Because of the losses caused by the shrinking subprime portfolio and falling values of its Level III assets, at several times Lehman attempted to shore up its deteriorating balance sheet by issuing debt, common shares, and preferred shares, all the while assuring investors that its exposure to subprime mortgage-related debt was minimal and falling. In fact, while Lehman had made significant progress in selling off its toxic subprime portfolio, its remaining subprime assets were significantly overvalued. In addition, Lehman had replaced the subprime assets with even riskier commercial real estate assets whose values were far more opaque and could more easily be hidden among its Level III assets. The true value of these assets should have also been disclosed to investors.

83.     Lehman conducted a series of public offerings of debt, equity and other securities including structured notes. Structured notes are essentially financial instruments that combine derivatives with fixed income and/or equities, resulting in a product that should in theory provide the safety of fixed income with the upside of a segment of the stock market. Lehman essentially created these notes through combining derivatives with a traditional investment (such as a bond). Lehman was the guarantor of the invested principal of the Plaintiff and the Class on these notes, which exposed purchasers to a credit risk related to Lehman as the guarantor.

84.     The securities subject to this action include without limitation the securities issued with an aggregate issuance value of more than $60 billion, including structured notes, issued in connection with the more than 800 separate public offerings conducted by Lehman from June 6, 2006 through the end of the Class Period pursuant to its Form S-3 shelf Registration Statement and Prospectus dated May 30, 2006, and the various prospectus supplements filed pursuant thereto. The details of each of the public offerings conducted pursuant to the May 30, 2006 shelf Registration Statement and Prospectus were provided in prospectus supplements that expressly incorporated Lehman's previously filed quarterly reports on Form 10-Q, Current Reports on Form 8-K, and annual reports on Form 10-K.

85.     These incorporated filings contained material misrepresentations and omissions because they failed to disclose that the true value of Lehman's Level III assets was far below these reported amounts. In fact, the Defendants should have known and were negligent in not knowing that the reported value of Lehman's Level III assets bore no relationship to reality.

86.      For example, the Preferred Stock Prospectus Supplement issued in connection with the offering of the Preferred Stock Series J stated:

> The consolidated financial statements and financial statement schedule of Lehman Brothers Holdings Inc. appearing in Lehman Brothers Holdings Inc.'s Annual Report (Form 10-K) for the year ended November 30, 2007, and of the effectiveness of internal control over financial reporting as of November 30, 2007 included therein have been audited by Ernst & Young LLP, independent registered public accounting firm, as set forth in their reports thereon, included therein, and incorporated by reference herein. Such consolidated financial statements are incorporated herein by reference in reliance upon the reports of Ernst & Young LLP pertaining to such consolidated financial statements given on authority of such firm as experts in accounting and auditing.

87.     On June 9, 2008, Lehman announced the first quarterly loss in its history, of approximately $2.8 billion (*ten times* larger than many analysts had expected), following write-

downs of $3.7 billion to its portfolio of mortgage-backed securities.  Notably absent from its losses, however, was any acknowledgement that its Level III assets might be similarly impaired.

88.    As the public digested the details of the second quarter losses in the days following the June 9 announcement, Lehman's stock price dropped, and never again recovered. Analysts quickly suspected that Lehman did not properly disclose the condition of its impaired Level III assets, and on June 12, *only three days* after the announcement of the second quarter loss, Lehman stunned the markets by "demoting" its CFO (Erin Callan) and its President and COO (Joseph Gregory).

89.    During the following three months, market analysts and potential investors figured out Lehman's true exposure to toxic assets, which set into motion a chain of events and subsequent disclosures that lead to an even larger and shocking third quarter loss of $3.9 billion, including gross mark-to-market "adjustments" of approximately $7.8 billion.  In other words, Lehman had been holding impaired assets at a value $7.8 billion higher than they should have been, a fact which the market had started to suspect, but not to this degree.  On Monday, September 15, 2008, Lehman filed for Chapter 11 bankruptcy in the Southern District of New York, but the filing specifically did not include the Lehman broker-dealers.   On Friday, September 19, 2008, LBI was forced into dissolution by the SIPC, also in the Southern District of New York.

90.    Neither Lehman, nor LBI, nor the Defendants, conducted a reasonable investigation of the statements contained in the Registration Statements and Prospectuses or the documents incorporated therein, and did not possess reasonable grounds for believing that the statements in those documents were true and not misleading.

91.     Defendants Callan, Fuld, Gregory and O'Meara, by virtue of their executive positions with the Company, each had key roles in controlling the Company's management, and each were involved in its day-to-day operations, including its financial reporting and accounting functions.  All three held top management positions within the Company and thereby controlled the Company individually and collectively, and were actively involved in convincing the Preferred Stock Investors to help recapitalize the Company.

92.     Public companies rely on independent registered public accounting firms to audit financial statements and review other public disclosures, assess internal controls, and gain the trust of the creditors and investors who will rely on the auditors' reports when deciding whether to invest in a company.  The Public Company Accounting Oversight Board ("PCAOB"), which was established by the Sarbanes-Oxley Act of 2002, is responsible for the development of auditing standards for auditors of public companies.  The PCAOB initially adopted as its Interim Professional Auditing Standards all the auditing standards that had previously been issued by the AICPA.  The auditing standards issued or adopted by the PCAOB, together with the auditing standards issued by the AICPA, are herein encompassed by the term GAAS.  The PCAOB and the AICPA have codified the professional auditing standards (represented herein as "AU") to ensure that audits are conducted in accordance with GAAS.  *See* AU § 150.

93.     There are ten GAAS provisions, which are divided into three types of standards: (1) general standards, which provide guidelines for auditor training and maintaining independence from the client; (2) standards of fieldwork, which provide guidelines for audit planning, collecting evidential verification for audit findings, and the proper evaluation of internal controls; and (3) standards of reporting, which are primarily concerned with ensuring

that financial statements are presented in accordance with GAAP.  Ernst & Young violated
almost every one of these provisions during its tenure as Lehman's auditor.

94.    GAAS General Standard No. 3 states:  "Due professional care is to be exercised
in the performance of the audit and the preparation of the report."  The exercise of due care
includes the application of professional skepticism in lieu of mere acceptance of representations
made by management.  Ernst & Young failed to exercise due professional care and professional
skepticism in the performance of its audits and in the preparation of its audit reports.

95.    GAAS Standard of Fieldwork No. 1 requires audits to be "adequately planned,"
and provides that particular attention should be paid to matters that, if inaccurately reported in a
financial statement, could materially alter a company's financial situation.  Ernst & Young was
aware that the value of Lehman's Level III assets was highly material to its financial statements,
but nevertheless failed to plan its audits in a manner reasonably designed to detect the
inaccuracies in the valuation of such assets as reported in the financial statements.

96.    GAAS Standard of Fieldwork No. 3 states that "[s]ufficent competent evidential
matter is to be obtained through inspection, observation, inquiries and confirmations to afford a
reasonable basis for forming an opinion regarding the financial statements under audit."  AU
§ 326, Evidential Matter, explains that the evidential matter collected and evaluated by auditors
is central to a proper audit and serves as the foundation for the auditor's opinion report.  Thus,
Ernst & Young was required to investigate and obtain supporting evidential documentation for
the assertions made by the Lehman in its financial statements, and could not merely take the
word of Lehman's management about the accuracy of their financial statements.  Ernst & Young
failed to obtain sufficient evidential material supporting the valuations of Lehman's Level III
assets.

97.     GAAS Standard of Reporting No. 1 states: "The [audit] report shall state whether the financial statements are presented in accordance with [GAAP]."  Ernst & Young issued unqualified audit reports stating that Lehman's financial statements were presented fairly and in accordance with GAAP.  In reality, however, Lehman's financial statements violated GAAP, as its valuations of its Level III assets were wildly overstated.

98.     GAAS Standard of Reporting No. 3 provides that "[i]nformative disclosures in the financial statements are to be regarded as reasonably adequate unless otherwise stated in the report."  Ernst & Young violated this standard by failing to recognize and/or state in its report that the disclosures in the financial statements were not only inadequate, but materially incorrect.

99.     GAAS Standard of Reporting No. 4 and AU § 508, Reports on Audited Financial Statements, provide that an auditor can only give an unqualified audit report if the company's "financial statements present fairly, in all material respects, an entity's financial position, results of operations, and cash flows in conformity with [GAAP]," and the audit was conducted in accordance with GAAS.  Section 508 further provides that if an auditor cannot give an unqualified audit report, the circumstances may require the auditor to give the company an adverse opinion or to include explanatory language in the audit opinion report to explain non-conformities.

100.    In violation of the foregoing provisions, Ernst & Young issued unqualified audit opinions, indicating that Lehman's financial statements complied with GAAP, when in fact they did not.  Rather than issuing unqualified audit reports, Ernst & Young should have issued either adverse audit reports noting Lehman's non-compliance with GAAP, or issued qualified audit reports highlighting the fact that Lehman's financial statements contained untrue statements of

material fact and omitted facts necessary to make the statements contained therein not misleading. Ernst & Young did neither.

## CAUSES OF ACTION

## COUNT I

### For Violations of Section 11 of the Securities Act

101. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein. This claim is asserted under Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the members of the class who during the class period purchased or otherwise acquired Lehman preferred stock or debt securities or other securities other than common stock, including structured notes, in or traceable to any of the Public Offerings against all Defendants. For the purposes of this Claim, Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

102. The Registration Statements and Prospectuses, which incorporated certain public disclosures by reference and the other prospectuses pursuant to which members of the Class acquired Lehman securities during the Class Period, were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated.

103. Lehman was the registrant for the Registration Statements and Prospectuses.

104. Though direct claims against Lehman at this time are barred by the bankruptcy code, Lehman, as issuer of the securities sold in the Public Offerings would otherwise be strictly liable to purchasers of those securities for the material misstatements and omissions alleged above. Similarly, because LBI is being dissolved pursuant to the SIPC, it is not a named defendant.

105.    Lehman and LBI were sellers, offerors, and/or solicitors of sales of all of the Public Offerings.  The Underwriter Defendants were sellers, offerors, and/or solicitors of sales of the February 5, 2008 Preferred Stock Series J shares issued pursuant to the Registration Statement and February 5, 2008 Prospectus Supplement and many of the other Public Offerings.

106.    Lehman, LBI, and each Underwriter Defendant is liable for the public offering of the Preferred Stock Series J securities conducted pursuant to the Registration Statement, and for the other Public Offerings in which they participated, which included untrue statements of material fact and omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading.  But for the fact that Lehman filed for bankruptcy protection and LBI is being dissolved pursuant to the SIPC, they would be named as defendants.

107.    Defendant Ernst & Young audited the Lehman financial statements that were incorporated by reference in the Registration Statements and Prospectuses.

108.    Ernst & Young's audit reports, which were incorporated by reference in the Registration Statements and Prospectuses, incorrectly stated that Ernst & Young's audits were performed in accordance with GAAS and that Lehman's financial statements were fairly presented in accordance with GAAP.

109.    Ernst & Young consented to being named as having prepared or certified part of the materially false and misleading Registration Statements and Prospectuses filed by Lehman registering securities acquired by Plaintiffs and the Class and/or as having prepared or certified expert reports, opinions and valuations used in connection with one or more of such Registration Statements and Prospectuses as alleged herein, and as such are liable to the Plaintiffs and the Class for damages.

110.    Ernst & Young is strictly liable to the members of the class who during the class period purchased or otherwise acquired Lehman preferred stock or debt securities or other securities other than common stock, including structured notes, in or traceable to any of the Public Offerings for the misstatements and omissions in its audit reports and in the financial statements that it audited.

111.    The Director Defendants were Directors of Lehman, the issuer of the securities at issue herein within the meaning of Section 11(a)(3) of the Securities Act.  All signed the Registration Statement either personally or through an attorney-in-fact, and all were Lehman Directors at the time of all Public Offerings.

112.    The Director Defendants were responsible for ensuring the true and accurate contents of the Registration Statements and Prospectuses, prior to their dissemination.

113.    The Director Defendants acted negligently and without reasonable care regarding the accuracy of the information contained in the Registration Statements and Prospectuses (including the public disclosures incorporated by reference therein), and lacked reasonable grounds to believe that such information was accurate and did not fail to state all material facts necessary to make the statements made therein not misleading.

114.    Plaintiffs and the members of the Class did not know, nor in the exercise of reasonable diligence could they have known, of the untrue statements of material fact or omissions of material facts in the Registration Statements and Prospectuses (including the public disclosures incorporated by reference therein) when they made their purchases of Lehman securities.

115.    By reasons of the conduct herein alleged, Defendants violated Section 11 of the Securities Act, and the members of the class who purchased or otherwise acquired Lehman

securities in or traceable to any of the Public Offerings and sustained damages are entitled to compensation.

116.    Plaintiffs have brought this action within one year after the discovery of the misstatements and omissions alleged herein, and within three years after the subject public offerings.

## COUNT II

### For Violations of Sections 12(a)(2) of the Securities Act

117.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.  This claim is asserted under Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of the members of the Class who during the Class Period purchased or otherwise acquired Lehman preferred stock or debt securities or other securities other than common stock, including structured notes, in or traceable to any of the Public Offerings against all Defendants. For the purposes of this Claim, Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

118.    The Registration Statements and Prospectuses, each of which incorporated certain public disclosures by reference, were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated.

119.    Lehman and LBI were sellers, offerors, and/or solicitors of sales of all of the Public Offerings.  The Underwriter Defendants were sellers, offerors, and/or solicitors of sales of the February 5, 2008 Preferred Stock Series J shares issued pursuant to the Registration Statement and February 5, 2008 Prospectus Supplement and many of the other Public Offerings.

120.    Because LBI is being dissolved pursuant to the SIPA, and Lehman has sought bankruptcy protection, they are not named as defendants in this action.

121.    Lehman, LBI, and each Underwriter Defendant is liable for the Public Offerings in which they participated, which included untrue statements of material fact and omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading.

122.    Plaintiffs did not know, nor in the exercise of reasonable diligence could they have known, of the untrue statements of material fact or omissions of material facts in the Registration Statements and Prospectuses (including the public disclosures incorporated by reference therein) when they made their purchases of Lehman securities.

123.    By reasons of the conduct herein alleged, Lehman, LBI and the Underwriter Defendants violated Section 12(a)(2) of the Securities Act, and Plaintiffs and the members of the Class who purchased or otherwise acquired Lehman securities in or traceable to any of the Public Offerings and sustained damages are entitled to compensation.

124.    Plaintiffs have brought this action within one year after the discovery of the misstatements and omissions alleged herein, and within three years after the subject public offerings.

## COUNT III

**Control Person Liability Pursuant to Section 15 of the Securities Act**
**(Based on Violations of Sections 11 and 12(a)(2) of the Securities Act**
**by Lehman and LBI)**

125.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.  Plaintiffs expressly disclaim any allegation of intentional or reckless misconduct.

126.     The Individual Defendants each acted as a controlling person of Lehman and LBI within the meaning of Section 15 of the Securities Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of Lehman's operations and/or intimate knowledge of the statements filed by Lehman with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Lehman, including the content and dissemination of the false and misleading statements of material facts and omissions. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to the time that these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

127.     Further, the Individual Defendants who were officers of Lehman including Defendants Callan, Fuld, Gregory and O'Meara had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions and statements giving rise to the securities violations as alleged herein, and exercised the same.

128.     As alleged above, non-parties Lehman and LBI violated Sections 11 and 12 of the Securities Act by its acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons of Lehman and LBI, the Individual Defendants are therefore liable pursuant to Section 15 of the Securities Act to the Plaintiffs and other members of the Class who purchased Lehman preferred stock or debt securities in or traceable to the defective Registration Statements and Prospectuses.

129. Plaintiffs have brought this action within one year after the discovery of the misstatements and omissions alleged herein, and within three years after the subject public offerings.

## JURY DEMAND

130. Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

(a) declaring this action to be a Class action properly maintainable pursuant to the Federal Rules of Civil Procedure, certifying the Class, and certifying their counsel as Class Counsel;

(b) awarding Plaintiffs and other members of the Class damages against Defendants, jointly and severally, together with interest thereon;

(c) awarding Plaintiffs and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees and experts' witness fees and other costs and disbursements; and

(d) awarding Plaintiffs and the Class such other and further relief as the Court may deem just and proper under the circumstances.

Dated: New York, New York
      December 2, 2008

**GRANT & EISENHOFER P.A.**

By : _____

Jay W. Eisenhofer
James J. Sabella
David A. Straite
Deborah A. Elman
485 Lexington Avenue, 29th Floor
New York, New York 10017
(646) 722-8500

**KIRBY McINERNEY LLP**

Mark A. Strauss
Richard L. Stone
825 Third Avenue
New York, NY 10022
(212) 371-6600

**LAW OFFICES BERNARD M.**
   **GROSS P.C.**

Deborah R. Gross
100 Penn Square East, Suite 450
Philadelphia, PA 19107
(215) 561-3600

**GARDY & NOTIS, LLP**

Mark C. Gardy
James S. Notis
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
(201) 567-7377

**FARUQI & FARUQI, LLP**

Nadeem Faruqi
369 Lexington Avenue, 10th Floor
New York, New York 10017
(212) 983-9330

*Attorneys for Plaintiffs*

## CERTIFICATION OF KATHY ROONEY GUERRA
## IN SUPPORT OF CLASS ACTION COMPLAINT

Kathy Rooney Guerra ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint prepared by counsel and has authorized its filing.

2.      Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      During the proposed Class Period, plaintiff executed the following transactions relating to Lehman Brothers Holdings Inc. Non-Cumulative Perpetual Preferred Stiock, Series J:

Purchase of 1,200 depositary shares at $25 per share on 02/05/08

5.      In the past three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws.

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

December 1, 2008

Kathy Rooney Guerra

LAW OFFICES BERNARD M. GROSS, P.C.

## CERTIFICATION OF W. JASON GUZEK

1.      I, W. Jason Guzek, have reviewed Complaint filed relating to the Lehman Brothers Holdings Inc. Series J preferred securities offering in February 2008. I have authority to sign this certification on behalf of Belmont Holdings Corp.

2.      Belmont Holdings did not purchase the Lehman Brothers Holdings Inc. Series J preferred securities at the direction of counsel or in order to participate in any private action arising under this title.

3.       Belmont Holdings is willing to serve as a class representative and provide testimony at deposition and trial if necessary.

4.      Belmont Holdings  purchased 300,000 shares of the Series J preferred securities in the offering at $25.00 per share.

5.      During the previous three years, Belmont Holdings has not been a lead plaintiff in any securities fraud class action.

6.      Belmont Holdings will not accept any payment for serving as a class representative beyond my pro rata share of any recovery, except as ordered or approved by the Court with respect to an award for reasonable costs and expenses (including lost wages).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of November , 2008, at Bala Cynwyd, Pa 19004.

W. Jason Guzek
1 Bala Ave Suite 310
Bala Cynwyd, Pa 19004